Argued and submitted January 17, affirmed July 8, reconsideration denied September 2, petition for review allowed September 29, 1992 (314 Or 391)

# STATE OF OREGON,
*Respondent,*

*v.*

# MARRION ALLISON KING,
*Appellant.*

## (90-61827; CA A69804)

834 P2d 463

Michael V. Phillips, Eugene, argued the cause for appellant. With him on the brief was Johnson, Clifton, Larson & Bolin, P.C., Eugene.

Diane S. Lefkow, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Deits and Durham, Judges.

RICHARDSON, P. J.

Durham, J., dissenting.

## RICHARDSON, P. J.

■     Defendant appeals his conviction, in a trial to a jury, of driving under the influence of intoxicants (DUII). ORS 813.010. He contends that the court erred by refusing to give his requested instructions. We affirm.

ORS 813.010 provides:

"(1)  A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a)  Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b)  Is under the influence of intoxicating liquor or a controlled substance; or

"(c)  Is under the influence of intoxicating liquor and a controlled substance."

The state offered evidence that defendant took an Intoxilyzer test and that the result was a .11 percent blood alcohol reading. It also introduced testimony from the arresting officer that defendant was perceptibly under the influence of intoxicants and a videotape showing defendant's action at the time he was arrested. Defendant produced evidence to refute the Intoxilyzer reading and the state's evidence. He argues that subsections (a) and (b) of the statute are two separate theories for proving the offense and that all of the jurors must agree on one or both theories. Defendant requested an instruction to that effect:

"I instruct you that all of you must agree on the manner or theory of the state in which the crime of Driving Under The Influence was committed, that is, your verdict must be unanimous to convict the Defendant of the crime charged and your verdict must be unanimous as to the theory, that is, was the Defendant driving while under the influence as I have previously instructed you, or did Defendant have a blood alcohol content greater than .08 percent by weight of alcohol at the time he was driving a vehicle."

The court declined to give the instruction, and defendant contends that that was error.

Defendant's argument is premised on *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), where the defendant was charged with aggravated murder, which is murder that was committed under at least one of 17 different circumstances. ORS 163.095. The state had alleged two of the aggravating factors. The trial court had instructed the jury that it was not necessary for all jurors to agree on the circumstances in which the murder was committed. The Supreme Court held that the instruction was erroneous, because it would allow a jury to convict with less than unanimous agreement as to which particular predicate acts defendant committed.

Defendant analogizes the DUII statute to the aggravated murder statute. The conceptual similarity, he says, is that the DUII statute defines a single crime through a list of alternative predicate acts that establish it. DUII is established, he argues, when either or both of two distinct acts are proven: defendant drove while having .08 percent or more of alcohol in his blood or while under the influence of liquor, a controlled substance or both. The analogy is complete, he argues, because, unless the jurors all agree on at least one of the state's theories, on the basis of proof of one of the required predicate acts, defendant is not guilty.

The argument does not gain merit simply by characterizing the parts of the DUII statute in the same way that the court in *Boots* described the elements of aggravated murder. The structure of the DUII statute is fundamentally different from that of the murder and aggravated murder statutes. Each aggravating element that can elevate murder to aggravated murder is discrete, and proof of one of the 17 elements does not constitute proof of any other; there is no overlap. By contrast, the parts of the DUII statutes, identified by defendant as elements or factual predicates, are merely ways to prove the single fact that defendant was under the influence of intoxicants. The parts are ways of proving the single predicate fact—being under the influence of intoxicants.

ORS 813.300 describes how the blood alcohol reading can be used as evidence. Subsection (2) provides:

> "Not less than .08 percent by weight of alcohol in a person's blood constitutes being under the influence of intoxicating liquor."

The blood alcohol reading is, thus, not an essential fact or element of the crime that must be proven, but evidence that goes to establish an element. In addition to a blood alcohol reading, there may be a variety of evidence relevant to whether a defendant was under the influence. For example, the arresting officer may describe performance of a "field sobriety test," ORS 813.135, or provide a videotape of the defendant's actions. Another witness may testify about the amount of intoxicants that the defendant consumed, and another may testify that the defendant admitted being drunk. Additionally, a defendant may have taken a chemical test, as provided in ORS 813.140 or ORS 813.150. It is not necessary that the jurors all agree on one body of evidence or the credibility of a witness in order to agree unanimously that a defendant was under the influence of intoxicants. In other words, it is not necessary that the jurors agree on a particular interpretation of the evidence offered to prove a single fact. The court did not err in refusing defendant's requested instruction.

■      Defendant also requested that the court instruct the jury:

> "You may consider evidence of the presence or absence of observable symptoms of intoxication in determining the accuracy of the breath test evidence.
>
> "It is up to you to determine what weight you will give to the breath test evidence. You are not required to accept such evidence. You should give the breath test evidence such weight as you feel is appropriate in reaching your verdict."

Defendant contends that it was error for the court to refuse the instruction because, without it, the jury could conclude that an Intoxilyzer reading of .11 created a presumption of guilt. He presented considerable expert evidence that challenged the accuracy of the Intoxilyzer reading. The court instructed the jury that, if it found beyond a reasonable doubt that defendant's blood alcohol level was .08 percent or greater, that constituted being under the influence of intoxicants. *See* ORS 813.300. Defendant argues that the instruction essentially told the jury that, if the Intoxilyzer test result was .08 or greater, then defendant was guilty.

The question of the accuracy of the blood alcohol test was earnestly litigated. Both parties presented evidence and

argument about what defendant's blood alcohol content may have been. The court's instructions told the jury that it was to decide what defendant's blood alcohol level was. The instruction told the jury the significance of blood alcohol content if the jury believed the evidence, as required by ORS 813.300. Defendant's requested instruction focused on certain types of evidence that could affect the accuracy of the Intoxilyzer test and was a comment on the probative value of that evidence. The court did not err by refusing the instruction.

Affirmed.

**DURHAM, J.,** dissenting.

I agree with the majority that the court properly rejected defendant's requested instruction concerning the weight to be given the breath test evidence. However, I disagree with the majority's analysis of defendant's argument based on ORS 813.010 and *State v. Boots*, 308 Or 371, 780 P2d 725 (1989), and, therefore, dissent from that portion of the opinion.

ORS 813.010 provides:

"(1) A person commits the offense of driving while under the influence of intoxicants if the person drives a vehicle while the person:

"(a) Has .08 percent or more by weight of alcohol in the blood of the person as shown by chemical analysis of the breath or blood of the person made under ORS 813.100, 813.140 or 813.150;

"(b) Is under the influence of intoxicating liquor or a controlled substance; or

"(c) Is under the influence of intoxicating liquor and a controlled substance."

"Driving under the influence of intoxicants" is the title of the offense described in ORS 813.010, but the statute does not designate *being* "under the influence of intoxicants" as a fact that must be proven for a conviction. The body of the statute specifies the factual elements and requires the state to prove that at least one of three facts described in subsections (a), (b) and (c) existed while the defendant drove a vehicle. The majority holds that the facts listed in the subsections are merely "evidence," but the text does not support that. The

list of facts is expressed in the disjunctive. Proof of at least one of them is no less essential to a conviction than proving that the defendant drove a vehicle.

*State v. Boots* found fault with an instruction that relieved the jury of its duty unanimously to find a fact — an aggravating circumstance — essential to its verdict of aggravated murder. The majority points out that the 17 different acts that could elevate a murder to an aggravated murder under ORS 163.095 are not synonymous and do not overlap. According to the majority, *Boots* is distinguishable, because the acts described in the subsections of ORS 813.010(1) are synonymous by operation of ORS 813.300(2), which equates a .08 blood alcohol content with being under the influence of intoxicating liquor. From that, the majority concludes that a driver's blood alcohol content is not an essential fact or element of the offense and is merely evidence from which a jury can infer guilt.

That is correct in part, but it does not answer defendant's argument. The court's instruction permitted jurors to vote to convict defendant despite any disagreement about whether he had done one of the acts described in ORS 813.010(1)(a), (b) and (c). The synonymity created by ORS 813.300(2) does not relieve the jury of its responsibility to reach a consensus about the course of conduct that establishes a fact essential to the offense.

The principle underlying *Boots* is the requirement of jury agreement on each fact that is necessary to establish every statutory element required for conviction. *Boots* quotes with approval the words of Judge Wisdom in *United States v. Gipson*, 553 F2d 453, 457 (5th Cir 1977):

> " 'Like the "reasonable doubt" standard, which was found to be an indispensable element in all criminal trials in *In re Winship*, 1970, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368, the unanimous jury requirement "impresses on the trier of fact the necessity of reaching a subjective state of certitude on the facts in issue." 397 U.S. at 364, 90 S.Ct. at 1072, 25 L.Ed.2d at 375. *The unanimity rule thus requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged.* Requiring the vote of twelve jurors to convict a defendant does little to

insure that his right to a unanimous verdict is protected *unless this prerequisite of jury consensus as to the defendant's course of action is also required.*' (Footnotes omitted.)" *State v. Boots, supra,* 308 Or at 380. (Emphasis supplied.)

The italicized portion of that quotation correctly focuses the requirement of jury unanimity on the defendant's "course of action." *Gipson* and *Boots* reject the notion that jury unanimity can consist of the concurrence of a sufficient number of jurors on an ultimate conclusion that the defendant should be convicted, although their view of the decisive facts is not unanimous. The *Boots* opinion expressly rejected this court's use of that faulty rationale in *State v. Hazelett,* 8 Or App 44, 492 P2d 501 (1972), where we saw no reason to require jury agreement on which of two possible mental states, both equally culpable, accompanied the act of homicide.

Even though having a .08 blood alcohol content, ORS 813.010(1)(a), could also support a finding that a driver was under the influence of alcohol under ORS 813.010(1)(b) or (c), neither that possible overlap in evidentiary effect nor the evidentiary conclusion created by ORS 813.300(2) makes those specific behaviors conceptually identical. The *Boots* requirement of jury unanimity is triggered when the essential facts required to establish an offense are conceptually distinct or when a jury would face characterization problems in distinguishing between them. *See United States v. Gipson,* 553 F2d 453, 458 (5th Cir 1977) (cited with approval in *State v. Boots, supra,* 308 Or at 381 n 9); *see also Annot.,* 75 ALR 4th 91 (1990). That requirement does not mean that jurors would have to agree on a particular witness' credibility or the factual details about how each essential fact was committed. *State v. Boots, supra,* 308 Or at 379.

I would apply the rationale of *State v. Boots* here. ORS 813.010(1) requires jury unanimity on at least one of the three acts described in subsections (a), (b) or (c), in addition to the act of driving a vehicle. Subsection (a) describes a particular act, *i.e.* having a .08 blood alcohol content, which can be proven only by specific test evidence. ORS 813.100; ORS 813.140; ORS 813.150. Evidence that a driver admitted consuming alcohol, drove erratically or failed a field sobriety test will not suffice to establish that he had a .08 blood alcohol

content. Subsections (b) and (c) describe other methods of proving the offense. The state must prove that the driver was under the influence of intoxicating liquor and/or a controlled substance. *State v. Miller*, 309 Or 362, 369, 788 P2d 974 (1990). The proof must establish that the driver was under the influence of, *i.e.* perceptibly affected by, say, alcohol, and the state may rely on a variety of evidence to prove the essential fact, such as slurred speech, unsteady gait and a strong odor of alcohol on the breath. The specific acts of a driver described in ORS 813.010(1)(a), (b) and (c) are sufficiently distinguishable that jury unanimity about them is essential to a fair trial. Without requiring jury unanimity on the specific course of conduct that establishes each decisive fact, we again commit the error in *State v. Hazelett*, for which we were criticized in *State v. Boots*.

The court's instruction permitted the jurors to convict defendant despite any differences among them about whether the state proved a .08 blood alcohol content or that defendant was perceptibly under the influence of liquor. It is not adequate simply to count the votes for conviction. To paraphrase *State v. Boots*, the jury must confront the question of whether it agrees that one of the essential facts required by ORS 813.010(1)(a), (b) or (c) has been proved beyond a reasonable doubt. 308 Or at 375. Because the court's instruction erroneously relieved the jury of that obligation, and defendant's instruction would have cured the problem, the court erred in refusing defendant's instruction. I would reverse and remand for a new trial.