Submitted May 10, 2010, reversed and remanded June 29, 2011

JAMES CLARK KNOX,
*Petitioner-Appellant,*

*v.*

Mark NOOTH,
Superintendent,
Snake River Correctional Institution,
*Defendant-Respondent.*

Malheur County Circuit Court
06065214P; A137526

260 P3d 562

Andrew S. Chilton and Chilton & Galli, LLC, filed the brief for appellant. James Clark Knox filed the supplemental brief *pro se*.

John R. Kroger, Attorney General, Jerome Lidz, Solicitor General, and Stacey RJ Guise, Senior Assistant Attorney General, filed the briefs for respondent.

Before Haselton, Presiding Judge, and Armstrong, Judge, and Wollheim, Judge.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioner appeals a judgment denying his petition for post-conviction relief, raising five assignments of error. We write to address only one of them, *viz.*, that the trial court erred in granting a motion by petitioner's appointed counsel to withdraw as his counsel and in ordering petitioner to proceed *pro se*. We agree with petitioner on that assignment and, accordingly, reverse and remand.

Petitioner was convicted of a number of sexual offenses. He filed an appeal from the convictions, and we affirmed them. *State v. Knox*, 201 Or App 733, 122 P3d 143 (2005), *rev den*, 340 Or 34, *cert den*, 549 US 842 (2006).

After the criminal case had concluded, petitioner filed a *pro se* petition for post-conviction relief and an affidavit under ORS 138.590 seeking to proceed as an indigent person and asking the trial court to appoint counsel for him. The court responded by appointing Mahony as petitioner's counsel. Mahony thereafter filed a formal petition for post-conviction relief on petitioner's behalf, asserting that trial and appellate counsel had provided petitioner with constitutionally deficient representation in his criminal case in a number of respects. After Mahony had filed the formal petition, petitioner filed a motion in accordance with *Church v. Gladden*, 244 Or 308, 417 P2d 993 (1966), that told the court that Mahony had not included in the formal petition several claims that petitioner had asked Mahony to include. Further, petitioner asked the court to instruct Mahony to add those claims to the petition or to "discharge" Mahony.[1]

During the hearing on the motion, the following colloquy occurred:

"[COURT:]  * * * You had filed a *Church v. Gladden* motion complaining about Mr. Mahony. I note that since

---

[1] Although petitioner used the term "discharge," he quoted language from *Church* that explained that a petitioner who believes that counsel has failed to follow a legitimate request must inform the court of that and "ask to have [counsel] replaced * * * or ask to have [counsel] instructed by the court to carry out [the] petitioner's request." *Church*, 244 Or at 311-12. Therefore, we understand petitioner's request that the court discharge Mahony to be a request that the court replace Mahony with another appointed counsel.

that time he has filed an amended formal petition for post-conviction relief * * *. I guess my question at this point is whether you are still concerned about representation[.]

"[PETITIONER:] Yes, I am still concerned.

"[COURT:] Tell me what it is you want Mr. Mahony to do that has not been done.

"[PETITIONER:] Well I mailed him a letter at some point with regard to carbon copy counts and also sent a memorandum of authorities to him and have yet [to get] a response from him whether or not he could include them."

The court proceeded to question Mahony about petitioner's concerns, which led to the following exchange:

"[MAHONY:] * * * Judge, I guess—I guess I feel like I am at a point where I need to withdraw as [petitioner's] attorney because I am hearing one thing when I meet with him and [something] completely different when he is complaining to the Judge.

"* * * [Petitioner] was deposed on the amended formal petition. At that time, and [defendant] was on the phone, [defendant] had no objection to add[ing] [an] additional issue as far as [an issue applying] the *Blakely* case * * * to consecutive sentencing.

"As I read the indictment on [the counts in question,] they all say separate acts. * * * Because [the indictment] says separate act[s], I guess my position is that if they are saying it is a separate act, then it is not a carbon copy count. Um, and that is—that is what he is saying now to you is completely different than what was told to me when we had the deposition. I think [petitioner is] just setting me up for bar complaints. I think he is setting me up to file—to do this. [Petitioner] has a history of this. Judge, based on what he has said today, I plan to file a motion to withdraw.

"[COURT:] [Petitioner], at this point I am not going to take any action on your *Church v. Gladden* complaint. Mr. Mahony is not required to file everything that you request of him if there is no legal or factual basis for what you are pursuing. * * * It appears Mr. Mahony has filed an extensive amended petition for post-conviction relief. I will indicate that quite likely I will not grant his motion to withdraw. I think the case is probably * * * already set for trial.

"[MAHONY:]   It is in June, Your Honor.

"* * * * *

"[COURT:]   Okay. Go ahead and file your * * * second amended petition. I can also—you also need to be aware of this, [petitioner], * * * if you, through your actions, force Mr. Mahony to withdraw, then in all likelihood you will be on your own; you will not receive another attorney.

"[MAHONY:]   And, Judge, I will have a motion to withdraw filed Monday.

"[COURT:]   Okay.

"[MAHONY:]   He is setting me up and * * * I have had it.

"[COURT:]   Well, at this point I do not—I do not think he has, but—but he is on notice. If you, through your action[s], make it impossible for your attorney to continue then, *generally*, I simply allow them to withdraw, and you continue without an attorney.

"* * * * *

"* * * [Petitioner], the fact that you may have submitted a memorandum does not mean that Mr. Mahony is required to submit that to the court. If he takes a look at it and does not believe that it * * * sets forth any type of proper legal argument, then * * * he is obligated, as an attorney, not to pursue it. His ethical obligation is to only pursue those factual and legal arguments that he believes, in good faith, ha[ve] some legitimate, even if marginal, basis. * * *

"* * * * *

"* * * [Y]ou have to understand you are not going to submit every issue that you may think * * * needs to be argued. This is a post-conviction proceeding. It is limited in scope. It is not for rearguing and rehashing everything that happened in your previous trial.

"[PETITIONER:]   I understand that, sir, but I am also barred from bringing them in a federal habeas corpus [proceeding] if I do not allege [the] issues that * * * have constitutional merit."

(Emphasis added.)

Mahony filed a motion to withdraw as petitioner's attorney the Wednesday after the hearing, arguing that

"[t]here has been an irreparable breakdown of the attorney/client relationship that cannot be repaired. By insisting I file additional issues to his post-conviction relief petition[,] it is clear to me [that petitioner] is setting me up for a bar complaint and/or lawsuit. Thus, it is impossible for me to be a zealous advocate for petitioner under these circumstances."

Although the record does not disclose that anything had occurred regarding Mahony's representation of petitioner between the hearing on petitioner's *Church v. Gladden* motion and the filing of Mahony's motion to withdraw, the court granted Mahony's motion and ordered petitioner to proceed *pro se*. In response, petitioner filed a motion for reconsideration that asked the court to rescind its order that allowed Mahony to withdraw as his counsel and, if the court did not do that, then to appoint new counsel for him. Petitioner emphasized in his motion that he needed "the assistance and advice of counsel regardless of how perfunctory that attorney is." The court denied the motion and, after a trial, entered a judgment denying the petition for post-conviction relief.[2]

On appeal, petitioner argues that the trial court violated his right to counsel under ORS 138.590[3] when it

---

[2] The trial judge who entered the judgment was not the same judge who had ruled on petitioner's and Mahony's motions.

[3] ORS 138.590 provides, in part:

"(1) Any petitioner who is unable to pay the expenses of a proceeding pursuant to ORS 138.510 to 138.680 or to employ suitable counsel possessing skills and experience commensurate with the nature of the conviction and complexity of the case for the proceeding may proceed as a financially eligible person pursuant to this section upon order of the circuit court in which the petition is filed.

"(2) If the petitioner wishes to proceed as a financially eligible person, the person shall file with the petition an affidavit stating inability to pay the expenses of a proceeding pursuant to ORS 138.510 to 138.680[.] * * * If the circuit court is satisfied that the petitioner is unable to * * * employ suitable counsel, it shall order that the petitioner proceed as a financially eligible person. * * *

"* * * * *

"(4) In the order to proceed as a financially eligible person, the circuit court shall appoint suitable counsel to represent petitioner. Counsel so appointed shall represent petitioner throughout the proceedings in the circuit court. The court may not substitute one appointed counsel for another except pursuant to the policies, procedures, standards and guidelines of the Public Defense Services Commission."

granted Mahony's motion to withdraw and ordered petitioner to proceed *pro se*. Defendant advances two arguments in response. First, defendant contends that the statutory argument that petitioner raises on appeal is not preserved because he did not argue to the trial court that ORS 138.590 required the court to appoint substitute counsel when it granted Mahony's motion to withdraw. Second, defendant argues that, even if petitioner's argument is preserved, ORS 138.590 does not require a trial court to appoint substitute counsel in a post-conviction case. Rather, according to defendant, the trial court has discretion whether to appoint substitute counsel after allowing appointed counsel to withdraw, and the court did not abuse its discretion in this case. For the reasons that follow, we conclude that petitioner's argument is preserved, and, as to the merits, we agree with petitioner.

We must first decide whether petitioner's argument is preserved, as required by ORAP 5.45(1).[4] Although ORAP 5.45(1) generally requires a party to raise an issue with the trial court in order for us to consider it on appeal, the requirements that a party must meet to adequately raise an issue before the trial court vary depending on the nature of the claim or argument. *Peeples v. Lampert*, 345 Or 209, 219-20, 191 P3d 637 (2008). When the construction and application of a statute controls the outcome of a case, "the ordinary rules of preservation are somewhat more lax." *State v. Smith*, 184 Or App 118, 122, 55 P3d 553 (2002). For example, and importantly for this case, a statute may be addressed and given effect on appeal despite the failure to cite the statute to the trial court if the statute is clearly implicated in the issue that the party raised at trial. *See id.*

Here, petitioner's argument on appeal focuses on his right to appointed counsel in his post-conviction case, an issue that he raised before the post-conviction court through his motion that asked the court to reconsider its decision to allow Mahony to withdraw and, if the court did not rescind its

---

[4] ORAP 5.45(1) provides, in relevant part:

"No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court and is assigned as error in the opening brief in accordance with this rule, provided that the appellate court may consider an error of law apparent on the record."

order, then to appoint him substitute counsel. The right to appointed counsel in post-conviction cases is created by statute—ORS 138.590—and, therefore, the issue raised in petitioner's motion necessarily implicates the proper application of ORS 138.590, *viz.*, whether and to what extent the court had authority to deny petitioner his statutory right to counsel by granting Mahony's request to withdraw and ordering petitioner to proceed *pro se*. Accordingly, petitioner's failure to cite ORS 138.590 to the trial court does not prevent us from determining whether the court erred, and, therefore, the matter is preserved.

We turn to the merits. We review for abuse of discretion court decisions on motions to allow counsel to withdraw or to appoint substitute counsel, *see State v. Davis*, 345 Or 551, 578-79, 201 P3d 185 (2008), *cert den*, ___ US ___ , 130 S Ct 371, 175 L Ed 2d 124 (2009) (reviewing for abuse of discretion court's denial of motions to allow counsel to withdraw in criminal case); *Temple v. Zenon*, 124 Or App 388, 392, 862 P2d 585 (1993) (reviewing for abuse of discretion court's denial of request for substitute counsel in post-conviction case), and, in accordance with that standard, we review for abuse of discretion a court's decision to require a petitioner to proceed *pro se* in a post-conviction case, *see State v. Spry*, 166 Or App 26, 29-30, 999 P2d 485, *rev den*, 331 Or 244 (2000) (reviewing for abuse of discretion court's decision to require the defendant to proceed to trial without counsel in a criminal case). To determine the extent of the court's discretion and whether the court abused it, a brief discussion of the statutory entitlement to appointed counsel in post-conviction cases provides important context.

States must afford people convicted of crimes "some clearly defined method by which they may raise claims of denial of federal [constitutional] rights" arising from the criminal proceedings that led to their conviction. *Young v. Ragen*, 337 US 235, 239, 69 S Ct 1073, 93 L Ed 1333 (1949). In light of that mandate, the Oregon legislature adopted the Post-Conviction Hearing Act (PCHA), ORS 138.510 to 138.680, to provide an effective procedure for people convicted of crimes to obtain relief against constitutionally flawed convictions. *See Shipman v. Gladden*, 253 Or 192, 203-04, 453 P2d 921 (1969); Jack G. Collins and Carl R. Neil,

*The Oregon Postconviction-Hearing Act*, 39 Or L Rev 337, 337 (1960). Importantly, a petitioner must assert all claims for post-conviction relief in the original or an amended petition for such relief, and "any grounds not so asserted are *deemed waived* unless the court on hearing a subsequent petition finds grounds for relief asserted therein which could not reasonably have been raised in the original or amended petition." ORS 138.550(3) (emphasis added). Further, as noted above, the PCHA provides in ORS 138.590 that any petitioner who wishes to be represented by appointed counsel and whom the court determines to be unable to afford suitable counsel shall be provided counsel. In light of the legislature's overall objective in adopting the act and the preclusive effect of ORS 138.550(3), the statutory right to appointed counsel serves an essential role in the fair and efficient resolution of post-conviction cases. *See* Collins and Neil, 39 Or L Rev at 351 ("The assistance of counsel is also highly desirable in view of the strict res judicata provisions in [the act].").

Under ORS 138.590, a court must decide whether a petitioner is eligible for the appointment of counsel and must appoint counsel before acting on a petition for post-conviction relief, *Kumar v. Schiedler*, 128 Or App 572, 576, 876 P2d 808 (1994), except when a court dismisses a meritless petition without a hearing and without prejudice, ORS 138.525; *Ware v. Hall*, 342 Or 444, 452, 154 P3d 118 (2007). Although ORS 138.590 assumes by its terms that a petitioner will be represented by the original appointed counsel throughout the post-conviction case, the need for a court to substitute one appointed counsel for another may arise.[5] To address that need, ORS 138.590(4) provides that a court may substitute one appointed counsel for another only "pursuant to the policies, procedures, standards and guidelines of the Public Defense Services Commission." The language specifying the

---

[5] Petitioner argues, in part, that the second sentence of ORS 138.590(4), which provides that appointed counsel "shall represent petitioner throughout the proceedings in the circuit court," creates an absolute right to appointed counsel in a post-conviction case, and, therefore, the court has no discretion to infringe on that right. We reject that argument. The quoted text merely identifies the period during which the statutory right to appointed counsel applies, *viz.*, after a petitioner has filed a petition for post-conviction relief, along with an affidavit of indigency, and until the court determines the proper disposition of the petition. *See Kumar*, 128 Or App at 575-76.

procedure by which a court may substitute appointed counsel in post-conviction cases was added to ORS 138.590(4) in 2003 through the enactment of House Bill (HB) 2074.[6] The legislature enacted HB 2074, in part, to address the "extraordinary expenses" incurred by the state as a result of providing multiple appointed counsel in certain types of proceedings. Audio Recording, House Committee on Judiciary, HB 2074, Apr 30, 2003, at 7:50 (statement of Bill Taylor, committee counsel), http://www.leg.state.or.us/listn/ (accessed June 23, 2011). To accomplish that purpose, the bill included

> "a number of provisions that limit the courts with respect to the number of attorneys [whom] a judge may appoint [in] a particular case. It is rare but disturbing when a defendant * * * requests multiple withdraw[als] and substitution[s] of new attorneys. And so [HB] 2074 puts the power * * * with the commission to adopt rules that restrict the judge's ability to appoint multiple sequential attorneys."

Audio Recording, Senate Committee on Judiciary, HB 2074, May 27, 2003, at 5:50 (statement of Ann Christian, Director of Indigent Defense Services Division), http://www.leg.state.or.us/listn/ (accessed June 23, 2011). In addition to post-conviction cases, the legislature also amended, through HB 2074, statutory provisions governing the substitution of appointed counsel in other types of cases—including criminal cases—requiring that substitutions in those cases be made pursuant to the same policies, procedures, standards, and guidelines of the Public Defense Services Commission that apply to post-conviction cases. *Compare* ORS 138.590(4), *with, e.g.,* ORS 135.050(6); ORS 138.500(2)(d).

   Despite the preference expressed by the legislature's 2003 amendment of ORS 138.590(4), *viz.,* that in post-conviction cases where circumstances require the removal of appointed counsel, the court will appoint another counsel for the petitioner, there may be circumstances in which the court has discretion to allow counsel to withdraw without appointing substitute counsel, thereby requiring the petitioner to proceed *pro se*. Although we have been called upon to decide

---

[6] Before the 2003 amendment, ORS 138.590(4) did not address the procedure by which a court could substitute one appointed counsel for another.

whether courts have abused their discretion by denying requests to substitute one appointed counsel for another in post-conviction cases, *e.g.*, *Mota v. Hill*, 215 Or App 623, 626-27, 170 P3d 1092 (2007), *rev den*, 346 Or 65 (2009); *Elkins v. Thompson*, 174 Or App 307, 317, 25 P3d 376, *rev den*, 332 Or 558 (2001), the circumstances in which a court may require a petitioner to proceed *pro se* after having been represented by appointed counsel have yet to be addressed in Oregon case law. To determine the circumstances in which a court may do that and, thereby, determine whether the court abused its discretion here, we look to the entitlement to appointed counsel in criminal cases, which is subject to statutory provisions on the appointment of counsel that are comparable to those that apply to post-conviction cases.[7]

The considerations that bear on the exercise of a court's discretion over the manner in which it implements the right to counsel in criminal cases are guided by the "need for an orderly and efficient judicial process." *See State v. Taylor*, 207 Or App 649, 662-63, 142 P3d 1093 (2006), *rev den*, 342 Or 299 (2007) (internal quotation marks omitted).

In *Taylor*, the defendant filed a motion to substitute appointed counsel on the day set for his criminal trial, arguing that the trial court should grant his request because his appointed counsel had done nothing in his case—specifically, counsel had failed to talk to the defendant as much as the defendant thought necessary and to subpoena certain witnesses—and because the defendant had filed a bar complaint against his counsel. The trial court denied the motion

---

[7] ORS 135.045 creates a statutory entitlement to appointed counsel for defendants in criminal cases, and ORS 135.050 establishes the requirements and procedures governing that entitlement. Those provisions mirror the provisions in ORS 138.590 governing the appointment of counsel in post-conviction cases.

We note that, in a criminal case, the state initiates the action against a person, whereas a post-conviction case is a collateral civil proceeding in which the petitioner is the party seeking relief against a criminal conviction. *See Miller v. Baldwin*, 176 Or App 500, 508-10, 32 P3d 234 (2001) (declining to "imply a statutory right to a delayed appeal as a remedy for the alleged inadequacy of post-conviction counsel in failing to file a timely notice of appeal"). Although we recognize that difference and its importance in the context of determining the remedies available to a petitioner to address the inadequacy of post-conviction counsel, the statutory right to appointed counsel in criminal cases properly bears on our assessment of the circumstances in which a court may exercise its authority in a post-conviction case to require a petitioner to proceed *pro se*.

because, among other reasons, it was made on the day of trial, the case was over a year old, and witnesses were in court and ready to testify. The defendant appealed and assigned error to the court's denial of his motion to substitute his appointed counsel, arguing that the court's decision violated, among other things, his statutory right to counsel under ORS 135.045 and ORS 135.050 (2001).[8] Before addressing the defendant's constitutional arguments, we reviewed for abuse of discretion the trial court's denial of the defendant's motion to substitute appointed counsel under the statutes and concluded that, in light of the need for an orderly and efficient resolution of the defendant's case, the court had not abused its discretion under ORS 135.050 (2001) by denying the defendant's motion. *Taylor*, 207 Or App at 663.

In *Spry*, the trial court was required under ORS 136.290 to release the defendant from pretrial custody if the defendant's criminal trial did not begin within 60 days of his arrest, unless the defendant consented to continue the trial. Five appointed attorneys had sequentially represented the defendant between his arrest and the 60-day trial deadline, four of whom had withdrawn because the defendant had refused to cooperate with them. On the morning of the defendant's trial, the fifth appointed attorney withdrew, and the court asked the defendant if he wanted to proceed *pro se*. The defendant did not want to do that, but, because the defendant would not consent to continue his trial, the trial proceeded as scheduled without the appointment of another attorney to represent the defendant. On appeal, the defendant argued that the trial court had erred in requiring him to proceed *pro se* without a valid waiver of his right to counsel. We disagreed, reasoning that

> "the trial court did not err in requiring [the] defendant to proceed to trial without counsel. The necessity of doing so was completely the result of [the] defendant's refusal to cooperate with several court-appointed lawyers and his refusal to waive his right to trial in 60 days. Throughout this matter, [the] defendant was repeatedly warned of the

---

[8] *Taylor* was decided under ORS 135.050 (2001), and, therefore, the 2003 amendment to the statute was not considered in the case.

situation that he was creating by refusing to cooperate with counsel * * *. He was given a reasonable opportunity to avoid the necessity of going to trial without counsel. Nonetheless, he chose a course of action that resulted in just that."

*Spry*, 166 Or App at 30. We concluded, in effect, that the need for a just and orderly judicial process, especially considering the requirements imposed by ORS 136.290, validated the trial court's decision to require the defendant to proceed *pro se*. *Cf. Spry*, 166 Or App at 29 (" 'As we said in *State v. Schmick*, 62 Or App 227, 660 P2d 693, *rev den*, 295 Or 122 (1983), the right to counsel must be balanced against the state's need to conclude the case in a timely manner.' " (Quoting *State v. Lingren*, 79 Or App 324, 327, 719 P2d 61 (1986).)).

In light of *Taylor* and *Spry*, we conclude that a court's authority to remove appointed counsel without substituting another appointed counsel in a post-conviction case arises when the need for an orderly and efficient judicial process compels the court to do that. Here, Mahony was petitioner's first appointed counsel, the court's order on Mahony's motion to withdraw was entered about a month before petitioner's scheduled trial date, and the court continued petitioner's trial for a total of roughly four months after entering the order. Further, the colloquy between petitioner and the court during the hearing on petitioner's *Church v. Gladden* motion suggests that the court has a general policy of ordering a petitioner to proceed *pro se* when the petitioner "make[s] it impossible for [the original appointed] attorney to continue" without giving due consideration to the facts presented in each case. Moreover, on this record, the court could not reasonably conclude that granting Mahony's motion to withdraw and ordering petitioner to proceed *pro se*, rather than substituting another appointed counsel for Mahony, was necessary to achieve a fair, orderly, and efficient resolution of petitioner's post-conviction case.

Accordingly, the court's decision to allow Mahony to withdraw and to require petitioner to proceed *pro se* does not reflect a proper exercise of discretion. Because the court abused its discretion under ORS 138.590, it follows that the

judgment denying petitioner's petition for post-conviction relief must be reversed.

Reversed and remanded.